COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS


 
 
  
  
  
  
 IN THE ESTATE OF
 MARGARET VILLASANA,
 DECEASED.
  
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  '
 
  
 
 
  
  
                  No. 08-02-00156-CV
  
 Appeal from the
  
 Probate
 Court No. 3
  
 of Dallas
 County, Texas 
  
 (TC# 98-365-P3)
  
 
 


MEMORANDUM
OPINION

 

One
of five heirs, Rudolph J. Villasana, Jr., appeals a
judgment of property division by a Dallas probate court.  From the real properties, the trial court
variously awarded cash to one heir, and undivided interests in the remaining
realty to the other four heirs. 
Appellant lists ten issues that essentially dispute the sale of certain
realty assets and the court=s
refusal to make a partitioned, in kind, division. We
affirm.

I

Appellant=s mother, Margaret K. Villasana, died intestate in December 1997.  She left twenty-two real estate parcels
valued between over one million dollars and just under
three million dollars.  Application for
administration was made for the Villasana estate and
three commissioners were appointed to partition and distribute the real
property.








The
decedent was survived by three children and two grandchildren.  The children include appellant, Rudolph J. Villasana, Jr., and appellees
Charles Villasana and Yolanda Villasana
Rodriguez.  The grandchildren are Michael
James Zapata, 46, and Patrick David Zapata, 44. 
It is undisputed that the three surviving children are each entitled to
twenty-five percent of the estate and the two grandsons are entitled to twelve
and one-half percent share each.  Only
one of the heirs, Patrick Zapata, represented to the court that he wanted the
realty sold and proceeds distributed in cash. 
The other four heirs requested distribution of the real estate in kind,
and made various but conflicting proposals to accomplish their desires.  The trial court appointed three commissioners
to make a partition and distribution of the real properties.  The commissioners in turn recommended that
all the property be sold in bulk.  The
commissioners also found that to divide the property in kind would devalue the
total and render it less marketable.








The
commissioners also reported, and the record discloses, the heirs could not
agree on an equitable division.  The commissioners=
report sheds further light on the trial court=s
challenge.  They note the heirs=
inability to agree upon an in kind partition, despite the commissioners= sincere encouragement, and the
willingness of Aone side@ to be both generous and fair.  At least one of the heirs had a business
interest among the properties to be distributed, making it unfair to assign
that property to another heir and also unfair to the other beneficiaries not to
receive this more valuable and saleable tract. 
Some Harwood/Harry Hines properties were in demand and readily saleable,
while others were not.  A significant
purchase offer was received for certain tracts as a group, and thus to divide
those tracts would be injurious to all heirs. 
The Acrown
jewel@ of
properties, worth an estimated $350,000, would be denied to any heir who could
not repay any over allotment, if assigned the property.  And one of the heirs (Patrick Zapata) was
financially unable and did not wish to join a group or joint ownership.  At the hearing, his attorney effectively
argued that if awarded one or two tracts in isolation, Patrick Zapata would not
receive his proportionate share of the estate. 
The commissioners concluded by recommending the bulk sale of all the
properties as the fairest to all beneficiaries. 
This was opposed by all, save Patrick Zapata.

After
a hearing, the trial court ordered the sale of the Harwood/Harry Hines and
certain other parcels.  From the
proceeds, Patrick Zapata was to receive the sum of $284,887.56 as his share in
the real estate.  The remaining real
property was to be distributed among the other heirs, according to their
respective interests.  All the heirs also
were awarded their 
proportionate share of the other non-real estate assets.

II

When
a party attacks the legal sufficiency of an adverse finding on an issue on
which he has the burden of proof, he must demonstrate on appeal that the
evidence establishes, as a matter of law, all vital facts in support of the
issue.  Dow Chemical Co. v. Francis,
46 S.W.3d 237, 241‑42 (Tex. 2001).  In reviewing a matter of law challenge, the
reviewing court must first examine the record for evidence that supports the
finding, while ignoring all evidence to the contrary.  Id. 
If there is no evidence to support the finding, then the reviewing court
will examine the entire record to determine if the contrary proposition is
established as a matter of law.  Id.  And the issue should be sustained only if the
contrary proposition is conclusively established.  Id.

When
the party opposing a claim or defense has lost the issue at trial, it may
attack

the legal sufficiency of the evidence by establishing that
there was no evidence to support

the finding in favor of the opponent=s
claim or defense.  Garza v. Alviar, 395 S.W.2d 821,

824 (Tex. 1965).  We
will sustain the challenge when the record discloses:  (1) a complete

absence of evidence of a vital fact; (2) the court is barred
by rules of law or of evidence








from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (4) the
evidence conclusively proves the opposite of the vital fact.  Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  In reviewing the evidence under a no‑evidence
point, we consider all the evidence in the light most favorable to the
prevailing party, indulging every reasonable inference in that party=s favor.  Associated Indemnity Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 285‑86
(Tex. 1998).  In evaluating legal
sufficiency, we are required to determine whether the proffered evidence as a
whole rises to the level that would enable reasonable and fair‑minded
people to differ in their conclusions.  Id. at 286.

A trial court=s
conclusions of law are not binding on this Court, and we may make our
own legal conclusions.  Harlingen
Irrigation Dist. Cameron County No. 1 v. Caprock
Communications, 49 S.W.3d 520, 530 (Tex. App.--Corpus Christi  2001, pet. denied);  Muller v. Nelson Sherrod & Carter,
563 S.W.2d 697, 701 (Tex. Civ. App.--Fort Worth 1978,
no writ).  AConclusions
of law are reviewed de novo as a question of law and will be upheld if the
judgment can be sustained on any legal theory supported by the evidence.@ 
Harlingen Irrigation Dist., 49 S.W.3d at 530.  A trial court=s conclusions of law may not be
reviewed for factual sufficiency.  Id.  Conclusions of law may be reversed only if
they are erroneous as a matter of law.  Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex.
App.--Austin 1999, pet. denied); Hofland v.
Fireman=s Fund
Ins. Co., 907 S.W.2d 597, 599 (Tex. App.--Corpus Christi 1995, no writ).  Incorrect conclusions of law do not require
reversal, provided that the controlling findings of fact support a correct
legal theory.  Stable Energy, 999 S.W.2d at 547.








III

While
appellant lists a total of ten issues, we agree with appellee
that the issues may be logically divided into three groups.  In his first group of seven issues, appellant
argues for an in kind distribution of the real estate to all the heirs.  He also argues against a partial sale and
distribution to Patrick Zapata, and against awarding an undivided interest in
the remaining properties.  Appellant=s next group of two issues argues
against the trial court=s
distribution of the remaining estate, including a cause of action, because
there was no evidence to support that distribution.  And finally, appellant urges error against
the trial court=s finding
that the administrative costs were $300,000.

In
his first set of issues, appellant argues that Texas law favors partition in
kind of jointly owned property, rather that sale and division.  He cites Adams v. Adams, 205 S.W.2d
801, 803 (Tex. Civ. App.--Waco 1947, no writ).  In a partition and trespass to try title
context, the court held the law looks with favor upon a partition in kind of
jointly owned property, rather than a sale and division of the proceeds derived
therefrom.  Id.
(citing Humble Oil & Refining Co. v. Lasseter,
95 S.W.2d 730 (Tex. Civ. App.--Texarkana 1936, writ dism=d)).  Appellant also argues that the probate code
requires the appointed commissioners to make a fair distribution in the
following order:

(c)
Partition by Commissioners.  The
commissioners shall make a fair, just, and impartial partition and distribution
of the estate in the following order:

(1)
Of the land or other property, by allotting to each distributee
a share in each parcel or shares in one or more parcels, or one or more parcels
separately, either with or without the addition of a share or shares of other
parcels, as shall be most for the interest of the distributees;
provided, the real estate is capable of being divided without manifest injury
to all or any of the distributees.








(2)
If the real estate is not capable of a fair, just and equal division in kind,
but may be made so by allotting to one or more of the distributees
a proportion of the money or other personal property to supply the deficiency
or deficiencies, the commissioners shall have power to make, as nearly as may
be, an equal division of the real estate and supply the deficiency of any share
or shares from the money or other property.

(3)
The commissioners shall proceed to make a like division in kind, as nearly as
may be, of the money and other personal property, and shall determine by lot,
among equal shares, to whom each particular share shall belong.

 

Tex. Prob. Code Ann. ' 380(c)
(Vernon 2003).

Appellant
argues that because the trial court appointed commissioners under Probate Code
section 380(a), that necessarily means the trial court found the estate was
capable of partition in kind.  We do not
agree.  First, there is no such finding
by the trial court.[1]  Additionally, appellant ignores section 380(c)(2) providing for circumstances when in kind division
cannot be accomplished fairly.  Tex. Prob. Code Ann. ' 380(c)(2)
(Vernon 2003).  The appellant notes
evidence from one commissioner, an appraisal expert, as well as some of the
parties, that the real property was capable of division in kind.  Appellant duly notes the trial court=s findings that the real property could
not be divided in kind because the parties disagreed on an equitable division
in kind.  Further the selling price of
the properties could decrease if sold separately.  Appellant neglects to mention here, that the
commissioners found the properties could not be distributed in kind, that the
individual aggravate value, versus assemblage value, was significant, and that
Patrick Zapata did not desire in kind distribution, as well as manifest Ainjustice@
to Patrick Zapata.[2]








Charles
Villasana counters first,  that in partition cases, the reviewing
court is precluded from reversing the trial court=s
judgment unless the evidence of unfairness is conclusive.  Grimes v. Collie, 733 S.W.2d 338, 341
(Tex. App.--El Paso 1987, no writ) (citing Grimes v. Hall, 211 S.W.2d
956 (Tex. Civ. App.‑‑Eastland 1948, no
writ)).  Appellee
relies heavily upon  Cecola v. Ruley,
12 S.W.3d 848, 855 (Tex. App.--Texarkana 2000, no pet.).  There, the court observes:

 The language in Texas Rule of Civil Procedure
770 requiring a showing that the land is incapable of partition in kind does
not mean incapable in a physical sense. 
Land could be divided into microscopic fractional pieces, but the court
must look to determine if a partition in kind would be impracticable, given the
small size of some interests, whether the divided interest would have an equal
interest relevant to its percentage of the whole, and whether the value of the
share of each would not be materially less than his share of the money
equivalent that would be obtained for the whole.

 

If
the property can be divided in kind without materially impairing its value, a
sale will not be ordered, but when dividing the land into parcels causes its
value to be substantially less than its value when whole, the rights of the
owners are substantially prejudiced. 
Substantial economic loss is one of the significant factors that would
warrant a sale in lieu of a partition in kind. . . . [B]ut
even if the two parts are divided into equal value, if the value as a part of
the larger tract has been greatly diminished, this also should be considered in
determining whether or not a division in kind would be fair and equitable.

 

Cecola, 12 S.W.3d at 855.  We agree.








Next
appellant finds fault with 
the trial courts finding of Amanifest
injustice@ instead
of the statutory language of Amanifest
injury.@  See Tex.
Prob. Code Ann. '
380(c)(1).  This
finding is in relationship to Patrick Zapata=s
interest.  Appellant reiterates his
argument from Adams, 205 S.W.2d at 803--that the law favors in kind
distribution rather than sale.  Appellant
complains the commissioners did not consider the different methods available for
arriving at a fair, just, and impartial division.  Specifically, the commissioners did not
consider grouping properties together, dividing the property on a percentage
basis, or encumbering certain parcels. 
However, Commissioner Hutchison=s
testimony  also
observed that the commissioners would have had to have much more information,
incur substantial additional costs, that the property could not be divided in
kind, and ultimately, to do so would reduce the value of the properties by
half.  We have already noted above other
reported concerns of the commissioners. 
In any event, it is ultimately the trial court, not the commissioners,
who must determine whether or not the properties can be divided in kind.  Rayson v. Johns, 524 S.W.2d 380, 382 (Tex. Civ.
App.--Texarkana 1975, writ ref=d
n.r.e.).

Appellant
next contends, in a variation of his Ainjury@ argument, that certain parcels  should not
have been sold to pay Patrick Zapata his share of the real estate in cash.  Primarily, appellant contends the experts
testified a Aforced
sale@ of a few
properties would diminish the value of these properties and injure the
estate.  Actually this testimony showed
the property values would be higher if sold in bulk, which was opposed by
appellant and most others.  Testimony
also showed that a division of the properties would devalue the total and
result in manifest injury to the beneficiaries. 
Specifically, Commissioner Hutchison testified that to divide the
properties in kind could devalue the total and render it less marketable.  The expert  Jon Duperier
did opine that in a liquidation, forced sale of individual properties would
result in discounted prices.   Appellant=s argument however,  also overlooks other evidence, that
certain properties had substantial offers on them, were in demand, and were
readily saleable.  Specifically, some
tracts had an offer of $55 per foot, $20 per foot higher than recent values
when appraised separately.  These were
the very properties ordered sold by the trial court, in order to satisfy the
minority interest of Patrick Zapata and administration costs.








Also
in the first group of issues, specifically Issue Four,  appellant reiterates his attack on the
Patrick Zapata sale and cash award, and dividing the remainder of the tracts
without partition to the other heirs. 
Zapata, he says, was treated in a favored manner, the others in a quite different
manner.  In a related challenge of Issue
Five, this argument is again reiterated, by degree, suggesting the trial court
erred in awarding an undivided interest in the remainder of the estate, to all
but Zapata.  He argues that the
applicable code mandates title to be vested in the distributees
of the respective shares.  See Tex. Prob. Code Ann. '
380(e).  Other than
the code, appellant cites no authority. 
This section provides:

(e)
Action of the Court.  Upon the
return of such report, the court shall examine the same carefully and hear all
exceptions and objections thereto, and evidence in favor of or against the
same, and if it be informal, shall cause said informality to be corrected.  If such division shall appear to have been
fairly made according to law, and no valid exceptions are taken to it, the
court shall approve it, and shall enter a decree vesting title in the distributees of their respective shares or portions of the
property as set apart to them by the commissioners; otherwise, the court may
set aside said report and division and order a new partition to be made.

 

Id.  Appellant does not consider the
requirements of this section that the division proposed by the commissioners is
subject to exceptions, objections, other evidence, and then if the division is
fairly made, with no valid exception, the court shall approve it and vest title
as argued.  Id.  We also observe the permissive language
of the statute, specifically the legislature=s
use of Amay.@  Id. 
Three of the heirs, representing seventy-five percent of the estate,
objected to the commissioners=
report.   Appellant himself
objected to the report.  And finally, the
report itself did not Aset
apart@ a
division.

Appellant
continues that no or insufficient evidence supports the trial court=s finding that the assemblage value was
$2,724,575.  He suggests this figure to
properly be $2,727,840.  Even if
appellant were correct, such error would be harmless.  See Tex.
R. App. P. 44.1(a)(1).  De minimus
non curat lex.[3]








Appellant
avers that the trial court=s
finding that the aggregate value of the real property if sold separately, was $1,210,920. 
The argument is based on the fact the trial court sustained appellant=s objection to the DCADS tax appraisal
figures in one column of one exhibit. 
This contention appears to be technically correct.  However, we also find considerable evidence,
and indeed appellant argues, that a piecemeal sale of individual properties
would significantly diminish the total value of the estate.  As such, the finding, even if erroneous, is
harmless.  Tex. R. App. P. 44.1(a)(1).

The
trial court conducted an extensive hearing and followed many of the
recommendations of the commissioners, but also considered considerable
other evidence.  It appears to us that the
trial court assiduously sought to accommodate not only a principal aim of
appellant, but also the majority interests in the estate--to hold the family
property together, and that the properties not be sold in bulk, as recommended
by the commissioners.








Generally,
where the evidence is conflicting or admits of more than one inference it is a
question of fact for the jury or the trier of facts
whether or not a partition in kind is feasible or a sale for division
necessary.  Kuehn v.
Wishard, 452 S.W.2d 5, 9-10 (Tex. Civ. App.--Houston [14th Dist.] 1970, writ ref=d n.r.e.)
(citing Adams, 205 S.W.2d at 803; Burton v.
Williams, 195 S.W.2d 245, 247 (Tex. Civ.
App.--Waco 1946, writ ref=d
n.r.e.); Robertson v. Robertson, 425 S.W.2d
707, 708 (Tex. Civ. App.--Houston [14th Dist.] 1968,
no writ)).  We recognize, as argued by
appellant, that the right to have property partitioned in kind is a valuable
right.  Pfeffer
v. Meissner, 286 S.W.2d 241, 247 (Tex. Civ. App.-- Galveston 1955, writ
ref=d n.r.e.).  However, the law likewise does not favor
compelling an owner to sell his property against his will (but prefers a
division in kind when such can be fairly and equitably made).  Rayson, 524
S.W.2d at 382 (citing Amerada Petroleum Corp. v. Cheesman,
223 S.W.2d 74 (Tex. Civ. App.--San Antonio 1949, writ
ref=d)). 
The trial court obviously tried to accommodate the majority interests in
the estate, including appellant=s,
by not following the commissioners= recommendation of bulk sale.  See id.  The trial court carefully crafted an
equitable remedy that protected the minority interest of Patrick Zapata, by
ordering the sale of the fewest properties at the greatest possible price,
under the circumstances.  See Campbell
v. Tufts, 3 S.W.3d 256, 260 (Tex. App.--Waco 1999,
no pet.) (court exercising its powers of equity in
partition suit need not partition the property by lot when A>the
interests of the parties in the realty to be partitioned are unequal.=@
(quoting Grimes v. Hall, 211 S.W.2d 956, 958
(Tex. Civ. App.‑‑Eastland 1948, no
writ)).  Appellant vehemently argued that
the properties should be held and not sold. 
This was accomplished to the greatest interest and equity of all.  Faced with conflicting evidence on the issue
or evidence admitting of more than one inference, the determination is for the
jury or the trier of fact, based upon a preponderance
of the evidence.  Burton, 195 S.W.2d at 247.  We
cannot conclude that the evidence shows unfairness to appellant.  Grimes, 733 S.W.2d
at 341.

Appellant=s first group of seven issues are
overruled.

In
Issue Eight, appellant complains of the trial court=s
distribution of all the remaining assets (excluding the real estate).  The distribution of the remaining assets was
exactly according  to
the heirship interests.  The gravamen of
this complaint is that the hearing was about the commissioners= report and no other evidence was
taken.  The Probate Code specifically
requires that the judgment of the court in a proceeding to declare heirship shall declare the names and places of residence of
the heirs of the decedent, and their respective shares and interests in the
real and personal property of such decedent. 
Tex. Prob. Code
Ann. ' 54 (Vernon 2003).  The heirship
interests were undisputed.  Appellant
does not demonstrate, nor do we perceive any harm to appellant.  Tex.
R. App. P. 44.1(a)(1).  This issue is also overruled.








In
his related Issue Nine, appellant again complains of the judgment=s pro rata award,  specifically attacking the pro rata
award of an interest in a lawsuit against two heirs for rent on one of the
properties.  He argues this is not just
and fair to reward the very defendants against whom the actions are
asserted.  The only reference to the
record relating to this lawsuit is found in the First Amended Application for
Administration at page two.  We believe
this error, if any, is waived.  See
Tex. R. App. P. 38.1(h).  Even so, the only legal argument, supported
by authority, asserts that the judgment is somehow a Mary Carter agreement,
which is void, citing Elbaor v. Smith, 845
S.W.2d 240, 250 (Tex. 1992).  We do not
discern how the trial court=s
judgment A. . .
create[s] the likelihood that a less culpable defendant will be hit with
the full judgment.@  Id. 
This issue is overruled.

In
his last issue, appellant challenges the trial court=s
finding that the administrative costs of the estate were $300,000.  At the hearing, the administrator told those
present that the outstanding administrative expenses incurred were $100,000 and
taxes owed were $45,000.  Appellant
complains that no evidence was taken and that no one addressed potential
expenses for the sale of real properties. 
The trial court, however, made supplemental findings of fact and conclusions
of law that noted:  A[T]he issue of
remaining administrative costs of the estate is always before the Court, and
must be given due consideration.@  Appellant fails to point to any
administration expenses that the trial court has already approved.  We can only conclude the trial court will
properly and fairly hear any complaints or evidence by appellant or others
before approving payment of expenses of the estate.  See Tex.
Prob. Code Ann. '' 262, 319 inter alia.  Appellant=s
last issue is overruled.








The
judgment of the trial court is affirmed.

 

DON WITTIG,
Senior Justice

August 29, 2003

 

Before Panel No. 5

Larsen, McClure, and Wittig, JJ.

(Wittig, J., sitting by
assignment)











[1]We
acknowledge that the trial court should not appoint the commissioners if it has
already  determined
the estate is incapable of partition.  See
Tex. Prob. Code
Ann. ' 380(a).  However, the fact that the trial court appointed
commissioners does not preclude the court=s
final or later determination that the estate is not capable of partition.  See id.





[2]Appellant
does mention most of these other findings, scattered amongst his first seven
issues.





[3]The
law does not cure minimal matters.  In
any event, appellant has waived this point by failing to accurately cite to a
voluminous record.  Tex. R. App. P. 38.1(h).